UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UMLAUT, INC.,

    Plaintiff,

v.

P3 USA, INC., WALTER KAUFMANN,
CHRIS HEILER, and MAREN BOEHMER,

    Defendants.
_____/

Case No. 2:19-cv-13310
Honorable Victoria A. Roberts

**ORDER DENYING DEFENDANTS' MOTION TO
DISMISS OR TO TRANSFER VENUE [ECF No. 16]**

## I.    INTRODUCTION

Umlaut, Inc., sues Defendants P3 USA, Inc., Walter Kaufmann, Chris Heiler, and Maren Boehmer. It accuses them of (1) violating employment agreements; (2) unfair competition by soliciting Umlauts clients, and employees; and (3) stealing trade secrets.

Defendants move to dismiss Umlaut's Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. They say the consent to jurisdiction provision in the Employment Agreement ("Agreement") is not dispositive of this Court's jurisdiction and that Michigan is not a reasonably convenient place for trial. They also say no Michigan long arm statute gives this Court jurisdiction and to assume jurisdiction would violate their due process rights. In the alternative, Defendants asks the Court to transfer this case to the District of South Carolina under 28 U.S.C. § 1404(a).

For the following reasons, the motion is **DENIED**.

1

## II. BACKGROUND

### A. Umlaut, Inc., and P3 USA, Inc.

Umlaut is a Colorado corporation with its principal place of business in Southfield, Michigan. P3 USA, Inc., is a Delaware corporation with its principal place of business in Greenville, South Carolina. P3 USA occasionally uses temporary space in Michigan. P3 says the majority of the events, witnesses and documents relevant to this litigation occurred in or are located in South Carolina.

Umlaut and P3 USA's parent companies entered into an agreement which prohibited them from soliciting one another's employees, as well as from disclosing or otherwise utilizing one another's trade secrets and other confidential information. P3 Global is P3 USA's parent company. P3 Automotive is also a subsidiary of P3 Global, but is a separate entity from P3 USA.

### B. Defendants Heiler and Boehmer

Heiler and Boehmer both accepted offers of employment from Umlaut. These offers required them to each sign the Agreement as a condition of employment. The Agreement required them not to disclose, use or publish any of Umlaut's proprietary information. It also contained a one-year non-compete clause.

The Agreement is governed by Michigan law. In it, Heiler and Boehmer consented to the personal jurisdiction of state and federal courts located in Oakland County, Michigan.

On April 8, 2019, P3 USA presented Heiler with an offer of employment. Shortly after, Heiler, using his Umlaut computer, uploaded Umlaut documents to an external hard drive. These files, allegedly, contain Umlaut's confidential, proprietary, and trade secret information. Heiler resigned from Umlaut on April 26, 2019, and began working for P3 USA three days later.

On May 22, 2019, Umlaut alleges a large Umlaut automotive client ("Automotive Client 1") emailed Heiler at his Umlaut address. It asked if Umlaut would like to be considered for consulting services. Heiler emailed his superior, Kaufmann, a partner at P3 USA, and stated that he intended to answer this offer on behalf of P3 USA.

Boehmer terminated her employment with Umlaut on October 8, 2018. Four months later, she began employment with P3 Automotive, located in Portland, Oregon. Around August 7, 2019, Umlaut alleges Boehmer contacted an employee of an Umlaut automotive client. Boehmer worked with this client during her employment at Umlaut. Boehmer allegedly asked the client to meet with her to discuss a potential project with her P3 Automotive. Umlaut also alleges that Boehmer attempted to obtain Umlaut's confidential information from an Umlaut employee by asking the employee about methods and procedures Umlaut implemented in connection with this automotive client. P3 eventually obtained new business from this client.

### C. Defendant Kaufmann

Kaufmann is a resident of Greenville, South Carolina. His work with P3 USA is based in South Carolina, but also includes on-site consulting for clients in other states. He occasionally does that in Michigan. P3 USA sometimes uses space in Michigan.

Kaufmann resigned his Umlaut position in January 2018 and started working with P3 USA one year later. Kaufmann allegedly participated in and encouraged Heiler's wrongful solicitation of Automotive Client 1 to P3 USA. This client is located in Auburn Hills, Michigan. Also, current Umlaut employee Fouad Ahmed allegedly contacted Kaufmann about one of Umlaut's automotive clients. During this exchange, Kaufmann asked Ahmed if he would leave Umlaut's employment and accept a full-time position with P3 USA.

### III. ANALYSIS

#### A. Defendants' Motion to Dismiss For Lack of Personal Jurisdiction

Defendants say this Court lacks personal jurisdiction and move for the case to be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Defendants say Michigan has no substantive connection to any of the claims against them, and that they have no systematic or continuous activities in the state. They say the only connection is a forum selection clause signed by Heiler and Boehmer.

In the absence of an evidentiary hearing, the plaintiff bears only a relatively slight burden to make a *prima facie* showing of jurisdiction. *Air Products. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). Since there has been no evidentiary hearing, the Court must view the pleadings and affidavits in the light most favorable to Umlaut, and may not rely on contradictory assertions made by the Defendants. *Bird v. Parsons*, 289 F.3d 865, 871-72 (6th Cir. 2002).

#### 1. General Jurisdictional Standard

Defendants argue that none of the criteria for general personal jurisdiction applies to P3 USA or Kaufman.

General personal jurisdiction over corporate defendants is governed by Mich. Comp. Laws § 600.711. That statute says the existence of any of the following relationships between a corporation and the state constitutes a sufficient basis to enable courts in this state to exercise general personal jurisdiction over the corporation: (1) incorporation under the laws of this state; (2) consent, to the extent authorized by the consent and subject to the limitation provided in M.C.L. § 600.745(2); and (3) the carrying on of a continuous and systematic part of its general business within the state. Mich. Comp. Laws § 600.711.

Under M.C.L. § 600.701, the existence of any of the following relationships between an individual and the state constitutes a sufficient basis to enable Michigan courts to exercise general personal jurisdiction over an individual: (1) presence in the state at the time process is served; (2) domicile in the state when process is served; and (3) consent to the extent authorized by the consent and subject to the limitations provided in M.C.L. § 600.745(2). Mich. Comp. Laws § 600.701.

The Court agrees with Defendants: general jurisdiction does not extend to Kaufmann and P3 USA; they do not meet the requirements under M.C.L. § 600.711 and § 600.701, respectively.

However, general personal jurisdiction does exist over Heiler and Boehmer because of their consent under M.C.L. § 600.711(2), by virtue of their forum selection clause, and because the exception under M.C.L. § 600.745(2) does not apply. In fact, for reasons that will be discussed below, their forum selection clauses allow the Court to exercise general jurisdiction over P3 USA and Kaufmann.

### a. All Defendants are Subject to the Forum Selection Clause

Defendant Kaufmann and P3 USA are also subject to the forum selection clause.

Umlaut contends that a non-signatory to a contract may be bound by a forum-selection clause "if the non-signatory is so sufficiently 'closely related' to the dispute that it is foreseeable that the party will be bound." *Holtzman v. Vill. Green Mgmt. Co. LLC*, 2020 WL 264331, at *7 (E.D. Mich. Jan. 17, 2020). A range of parties should benefit from and be subject to forum selection clauses where the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants. *Id*.

Tortious interference claims against non-signatories to a contract with a valid forum selection clause can bind those non-signatories to that forum. *Thomas– Williams v. MGM Grand*

5

*Detroit LLC*, 2009 WL 916952, at *4 (E.D. Mich. Mar. 31, 2009). "A contractually-based forum selection clause might also encompass tort claims if the tort claims ultimately depend on the existence of the contractual relationship between the parties, or if resolution of the claims relates to the interpretation of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach of contract". *Id*.

Umlaut's claims against P3 USA and Kaufmann are for tortious interference with the same Agreement that contains the forum selection clause. The tortious inference claims "depend on the existence of the contractual relationship between the parties." Also, the tortious interference claims "involve the same operative facts as a parallel claim for breach of contract." P3 USA and Kaufmann are bound by the forum selection clause.

### b. The Court has General Jurisdiction over Heiler and Boehmer

Heiler and Boehmer signed forum selection clauses. Nonetheless, they say their consent is subject to the exception under M.C.L. § 600.745(2). They say that the Agreement should not be enforced because Michigan is not a reasonably convenient place for trial. The Court disagrees.

In relevant part, M.C.L. § 600.745(2) provides: "If the parties agreed in writing that an action on a controversy may be brought in this state and the agreement provides the only basis for the exercise of jurisdiction, a court of this state shall entertain the action if all the following occur: (a) The court has power under the law of this state to entertain the action[,] (b) this state is a reasonably convenient place for the trial of the action[,] (c) the agreement as to the place of the action is not obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means[, and] (d) and the defendant is served with process as provided by court rules." Mich. Comp. Laws 600.745(2).

6

The only contested factor is (b). Heiler and Boehmer say Michigan is not a "reasonably convenient place for trial because they would have to travel to Michigan from Texas and Oregon.

Michigan law is clear: neither residency in other states nor alleged lack of contacts with a chosen forum prevents the forum from being reasonably convenient under M.C.L. § 600.745(2). *See FCA US LLC v. Bullock*, 2018 WL 1875597, at *3 (E.D. Mich. Apr. 19, 2018). In *Bullock*, the Court found Michigan to be a convenient place for trial where a California resident violated a confidentiality agreement that contained a Michigan forum selection clause, even though she had no contacts with or connection to Michigan. *Id*. Here, Defendants Heiler and Boehmer are also not Michigan residents, and their lack of contacts here sincerely do not matter.

Their Agreements are enforceable because Michigan is a reasonably convenient place for trial. M.C.L. § 600.711(2) applies.

### c. Limited Jurisdiction

Although the Court may lack general jurisdiction over P3 USA and Kaufmann, the Court can exercise limited jurisdiction.

In analyzing personal jurisdiction in diversity actions, "federal courts must look to the law of the forum state to determine the reach of the district court's personal jurisdiction over parties, subject to constitutional due process requirements." *Air Products*, 503 F.3d at 550. Michigan courts follow a two-step process: "(1) first, the court must determine whether any of Michigan's relevant long-arm statutes authorize the exercise of jurisdiction over Defendants; and, if so, (2) the court must determine whether the exercise of that jurisdiction comports with constitutional due process." *Id*. Defendants say their activities do not fall within the reach of Michigan's long-arm statute, and that due process is not satisfied.

### d. The Long Arm Statutes

7

Defendants argue that Michigan's long arm statutes do not apply because they do not reside in Michigan, they do not transact sufficient business within Michigan, and they are not subject to the Agreement.

Michigan's long-arm statutes extend limited jurisdiction over a non-resident individual or corporation if the action arises out of various "relationships" with Michigan. One such relationship includes "the doing or causing of any act to be done, or consequences to occur, in the state resulting in an action for tort." M.C.L. § 600.705(2) (individuals); M.C.L. § 600.715(2) (corporations). As will be described, both P3 USA and Kaufmann allegedly assisted Heiler in the commission of tortious acts in Michigan.

### e. The Court has Limited Jurisdiction Over P3 USA and Kaufmann

Defendants do not address either of Michigan's long arm statutes. Failure to respond to an argument amounts to waiver of that issue. *See Akaazua v. Walker Novak Legal Grp*., WL 2388096, at 1 (W.D. Mich. Mar. 6, 2019).

Umlaut says that Heiler, while working at P3 USA, used his status as a former Umlaut employee to solicit one of Umlaut's largest automotive clients, based in Michigan. Kaufmann, on behalf of P3 USA, encouraged Heiler to solicit the client. Kaufmann also attempted to solicit Fouad Ahmed, an Umlaut employee. These are sufficient allegations of tortious conduct with consequences in Michigan.

Umlaut relies on *Ajuba Int'l LLC v. Saharia*, 871 F. Supp. 2d 671, 681 (E.D. Mich. 2013). There, the court held that it could exercise jurisdiction over a former employee of a company and his new employer under M.C.L. § 600.705(2) and M.C.L. § 600.715(2) where the former employee was "part of an alleged scheme" and had "acted as an agent" of his former company while interfering with his former company's business. *Id*. In *Ajuba*, the Court

8

emphasized that defendants engaged in conduct that has caused tortious injury in Michigan. *Id*. Here, the analysis is similar. Kaufmann and P3 USA committed tortious acts that affected Umlaut in Michigan.

These acts allegedly include a scheme to siphon business from Umlaut. As a result of these actions, Umlaut would suffer harm in Michigan, and this Court has limited jurisdiction over these Defendants under M.C.L. §§ 600.705(2) and 600.715(2).

## 2. Due Process Considerations

Defendants say that even if the Court had jurisdiction over them, due process would be violated if the Court assumes jurisdiction. Defendants say they do not possess "minimum contacts" with Michigan, and this Court's exercise of jurisdiction over them would not comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

### a. Heiler and Boehmer's Forum Selection Clause Comports with Due Process

Defendants argue that it would be too inconvenient for Heiler and Boehmer to litigate in Michigan.

For due process purposes, forum selection clauses are upheld absent a strong showing that they should be set aside. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). In determining whether a forum-selection clause should be set aside, a court examines: (i) whether the forum-selection clause was obtained by fraud, duress, or other unconscionable means; (ii) whether the selected forum would ineffectively or unfairly handle the suit; and (iii) whether the selected forum would be "so seriously inconvenient" such that requiring the party seeking to avoid enforcement to litigate there would be unjust. *Id.*

9

Heiler and Boehmer have not alleged that the Agreement was obtained by fraud or duress. Nor do they suggest this Court would ineffectively handle the suit. They merely say Michigan would be an inconvenient place to litigate. Their stated inconvenience is insufficient to satisfy the test. "A finding of unjust or unreasonable enforcement under the third prong of the test 'must be based on more than mere inconvenience of the party seeking to avoid the clause.'" *Bullock*, 2018 WL 1875597 at *4 (citation omitted).

### b.  Due Process Test for Kaufmann and P3 USA

Defendants argue they do not purposefully avail themselves of the privilege of causing consequences in the forum state, nor did the cause of action arise from their activities here.

The Sixth Circuit applies a three-part test to determine whether specific jurisdiction can be exercised over a non- resident defendant. First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Air Prods.*, 503 F.3d at 550. The finding of the first two elements creates an inference that the third factor is also met. *Bird*, 289 F.3d at 875.

### c.  Purposeful Availment Prong is Satisfied

Defendants' argue they never purposely availed themselves of the privilege of acting or causing a consequence in Michigan.

The purposeful availment requirement ensures that "'random,' 'fortuitous,' or 'attenuated' contacts do not cause a defendant to be haled into a jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). To satisfy this requirement, physical presence in the

10

forum state is not required; instead, "if the nonresident conducted business, committed a tort, or furthered a tortious scheme in the forum, even by way of phone call or written correspondence to the forum, personal jurisdiction is appropriate." *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656, 663 (E.D. Mich. 1996).

Umlaut sufficiently alleges that Heiler, Kaufmann, and P3 USA reached into Michigan as part of their tortious scheme to unfairly compete against Umlaut. Umlaut says Heiler emailed Umlaut's employee in Michigan during a successful attempt to misappropriate Umlaut's confidential information. Also, Heiler and Kaufmann exchanged emails with one of Umlaut's clients in an attempt to transfer that client's business to P3 USA. These communications satisfy the "purposeful availment" prong of the due process test.

### d. Claims "Arise From" Defendants Activities in the Forum

Defendants argue they did not engage in any activities in Michigan giving rise to this lawsuit.

Under the due process clause, an action will be deemed not to have arisen from the defendant's contacts with the forum state only when they are unrelated to the operative facts of the controversy. *Ignacio Lopez*, 948 F. Supp. at 663. Defendants claim that any alleged contacts between Boehmer and Heiler did not occur within Michigan, but, contact between Boehmer and Heiler is not at issue. Defendants fail to address Heiler's contact with Umlaut's IT department that gave rise to Umlaut's claim of tortious interference. It is clear that the tortious interference claims against Heiler, Kaufmann and P3 USA arose out of Kaufmann and Heiler's emails with a Michigan based client, and the harm was directed toward Umlaut, a Michigan-based business.

These claims arose out of Heiler, Kaufmann, and P3 USA's contacts with Michigan.

11

### e. It is Reasonable for Michigan to Exercise Jurisdiction Over Defendants

As to the "reasonableness of jurisdiction" part of the test, "an inference arises that the third factor is satisfied if the first two requirements are met." *Bird*, 289 F.3d at 875. Where a defendant who purposefully directed activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Defendants do not present a compelling case, and they fail to identify any "serious burden" that prevents them from litigating in Michigan. Michigan has an interest in "protecting its citizens from unfair competition." *Ajuba*, 871 F. Supp. 2d at 684.

Because it is clear that claims against the Defendants arose out of their contacts with Michigan, and given Michigan's interest in litigating the case, it is reasonable for this Court to exercise jurisdiction.

### B. MOTION TO TRANSFER VENUE

The forum selection clause binds all Defendants to this jurisdiction. But, Defendants argue that under the traditional 28 U.S.C. § 1404(a) analysis, the balance of factors weighs in favor of transfer. They place a heavy emphasis on convenience, but their argument fails.

#### 1. Private Interests Are Irrelevant

Defendants argue that private factors should be considered and weigh in their favor. These factors include: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; and (5) the cost of obtaining willing witnesses. But, these factors are irrelevant. *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*,

571 U.S. 49 (2013). In *Atlantic Marine*, the United States Supreme Court concluded that an enforceable forum selection clause alters the usual § 1404(a) analysis. 571 U.S. at 63.

A court evaluating a party's § 1404(a) motion to transfer based on a forum-selection clause "should not consider arguments about the parties' private interests" as "whatever 'inconvenience' the parties would suffer by being forced to litigate in the contractual forum as they agreed to do was clearly foreseeable at the time of contracting." *Id*. at 64. "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." This case is not unusual.

### 2. The Public Interest Weighs Against Transfer

Under the *Atlantic Marine* analysis, the only remaining inquiry is whether the public interest weighs in favor of transfer. 571 U.S. at 63. Defendants fail to adequately address this factor.

"Public-interest factors to consider include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id* at 63.

Defendants fail to address the "local interest" factor. They only say the District of South Carolina has local interest because half of the Defendants are residents of the District of South Carolina, and Heiler's work often requires his presence in South Carolina. This factor favors Umlaut because the Defendants have engaged in tortious activity directed against Umlaut, a company in Southfield, Michigan. Defendants have not addressed the remaining public interest factors, and rely solely on this to conclude this forum selection clause is unusual.

The following two factors are not analyzed by the Defendants. In regard to congestion, Umlaut says The United States District Courts' National Judicial Caseload Profile provides that

13

for the 12-month period, the Eastern District of Michigan had 5,068 filings, while the District of South Carolina had 5,060 filings. This factor does not weigh in favor of either party.

The last public interest factor – the interest in having the trial of a diversity case in a forum that is at home with the law – favors the Eastern District of Michigan. The Agreement is governed by Michigan law. It is more likely that this Court is more familiar with Michigan law than a federal court in another state. *See Sygnetics, Inc. v. Hops Int'l, Inc.*, 2013 WL 1395806, at *5 (E.D. Mich. Apr. 5, 2013).

Defendants do not demonstrate that this is the "unusual case" where the forum-selection clause should not control.

## IV. CONCLUSION

Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, or in the alternative, for Transfer of Venue is **DENIED**.

**ORDERED.**

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: 7/15/2020